## DANIEL WOODWARD *v.* ZEB B. FRENCH.

*School districts. Taxes. Grand list.*

A person, resident in a school district, on the first day of April, who is assessed as the owner of personal estate, and whose list is designated by the listers as belonging to such district, is liable to pay taxes in such district, while such list continues in force, though he has removed from the district.

If a material averment is alleged argumentatively, it can only be taken advantage of by a special demurrer.

TRESPASS for taking four boxes of window-glass. The defendant plead the general issue, and a special plea in justification, setting forth in substance, that at a legal meeting of the legal voters of school district number seventeen, in Royalton, on the 25th of October, 1856, Phineas D. Pierce, Jireh Tucker and the defendant were duly elected prudential committee of the district, and the defendant was duly elected collector of taxes; that at a legal meeting of the district, held on the 26th of February, 1857, a tax of seventy-four dollars and twenty cents was voted for the purpose of paying the debts of the district; that the prudential committee above mentioned assessed and apportioned this sum upon the lists, polls and estates of and within said school district, and delivered the rate bill so made to the defendant for collection; that before and at the time this tax was voted the plaintiff was legally liable to pay school-taxes in that district, and that the prudential committee assessed and apportioned his poll, property and estate legally taxable in that district, and set in the rate bill to the plaintiff's name the sum of seven dollars and thirty-one cents as his proper portion of the tax voted as above mentioned; that the defendant, as such collector, on the 17th day of March, 1857, after discharging all the preliminary duties in that behalf prescribed by statute, (which were all specifically set forth in the plea,) upon the plaintiff's refusal to pay the tax so set against his name, distrained and sold the personal property, the taking of which was complained of in the declaration, for eight dollars and twenty-five cents, a sum not sufficient to pay the said tax and the legal costs of the sale, etc.

To this plea the plaintiff replied that he resided in said school

district on the 1st day of April, 1856, but had then no real estate in that district; that on the 25th of April, 1856, and before the tax was laid as alleged in the plea, he removed from that district into district number fourteen in the same town, and thereby became and thereafter continued to be an inhabitant of the latter district, and liable to pay taxes therein, *without this*, that the plaintiff was liable to pay taxes in district number seventeen.

To this replication the defendant rejoined that the plaintiff on the 1st of April, 1856, was a resident and inhabitant of district number seventeen, and so continued until the 24th of April, 1856; that on the 1st of April, 1856, the plaintiff was the owner of certain personal property, located and kept by him in that district; that the listers of Royalton, for the year 1856, appraised and set in the grand list of that town for that year this personal property, together with the plaintiff's poll, and designated the same in the grand list as being in that school district; and that this personal property and poll were the same on which the assessment and tax named in the plea were based.

To this rejoinder the plaintiff demurred, and the cause was tried at the January Term, 1858, of the Orange County Court,— BARRETT, J., presiding.

The court held the rejoinder insufficient, and rendered judgment for the plaintiff, to which the defendant excepted.

*J. S. Marcy* and *A. P. Hunton*, for the defendant, claimed that the plaintiff was liable to be taxed in district number seventeen, upon the grand list made the April previous, notwithstanding his removal from the district after such list was made, and before the tax was laid, and cited Comp. Stat. chap. 80, sections 35, 36, 37 and 38; acts of 1855, p. 47, sec. 8, p. 48, sec. 12; acts of 1855, p. 37, sec. 2; acts of 1854, p. 63; *Fairbanks* v. *Kittredge*, 24 Vt. 9; *School District No.* 1 v. *Kittredge*, 27 Vt. 650.

*D. C. Denison* and *Gustavus Rolfe*, for the plaintiff.

School districts have no power to vote a tax against any but inhabitants *at the time the tax is voted*, and the prudential committee are directed by the very words of the statute to "assess" the tax "in the lists of the inhabitants of such district, and on lands

in such district belonging to persons living out of it." Comp. Stat. 148, sec. 37, 149, sec. 41.   No power whatever is given to tax persons who do not reside in the district, except on real estate and certain personal property of persons who do not reside *in town.*   If the tax payer *resides in town,* he must be taxed in the school district in which he resides, or is an inhabitant, at the time the tax is voted.   The statute itself makes the distinction between persons residing in town and persons not residing in town.

POLAND, J.   The important question presented by the pleadings in this case is, whether a person resident in a school district on the first day of April, who is assessed as the owner of personal estate, and whose list is designated by the listers as belonging to such district, is liable to pay taxes in such district, while such list continues in force, though he has removed from the district.

The answer to this question must be found by the result of a comparison of all the various provisions of our statutes relating to this subject.

School districts, from the time of the first creation of such corporations in the State, have been authorized to raise money to build school houses and support schools, by taxing the property of the inhabitants of the district, but they were never authorized to make a list or assessment, as a basis for such tax, but must resort to the list or assessment made by the listers of the town, for that purpose.

The act of 1797, (see Slade's Comp. 590, sec. 3,) provides that when a tax should be voted by the district on the list, it should be assessed on the list of the polls and ratable property of the inhabitants of such district.   Under this law it was undoubtedly the duty of the prudential committee in assessing a tax, to ascertain who were actual inhabitants of the district when the tax was voted, and assess the tax upon their lists, and it was immaterial whether they resided in the district when their lists were taken, and there was no distinction made, whether their real estate set in the list, was within the district or not.   The only test of their liability was residence in the district when the tax was voted, and having a list in the town.

Woodward v. French.

At some time prior to the compilation of 1839, (the particular year I have not taken pains to ascertain,) the legislature enacted that all real estate should be taxed for school district purposes in the district where it was situated, and this has continued to be the law ever since. This statute however did not provide for any separate valuation by the listers, where the same person owned land in different districts in town, nor were the listers required to make any designation upon the list, of the school district in which real estate was situated, until 1844, when an act was passed requiring both to be done at the next new appraisal of real estate, which was to take place in 1847.

In 1847 an act was passed requiring the listers to designate in the list the appraised value of all real and personal estate, in each district severally, and also providing that such appraisal shall be the grand list for said district, until another grand list shall be made. See Comp. Statutes 457, sections 35 and 36. In 1850 it was provided that certain personal property (which by an act of 1841, was required to be listed in the town where it was situated on the 1st of April, though the owner lived in another town,) should be taxed in the school district where it was kept on such 1st day of April, in the year such assessment was made. See Comp. Stat. 457, section 38.

By the second section of an act passed in 1851, it was enacted that the grand list to be completed on the 15th day of May, for the assessment of town and highway taxes, " shall be the list on which all school and village taxes shall be assessed that are voted within the year," and the same act repeals all previous laws inconsistent therewith. See laws of 1851, p. 37.

In 1855 an act was passed making various alterations in relation to assessing property, and making up the grand list, in which are incorporated substantially the same provisions in relation to designating real estate in the several districts where it is situated, as are contained in the act of 1847, but making no provision for the designation of lists for personal estate in the several school districts. This act also repeals all former acts inconsitent with itself. See laws of 1855, pages 52, 53 and 59.

The plaintiff, in support of his position, that he was not liable to be taxed in the district (where he resided on the first of April,

and where his list was taken and designated in the grand list,) after his removal from it, relies mainly on sections 37 and 41 of chap. 20 of the Comp. Stat., which provides that school districts may vote taxes " on the lists of the inhabitants of such districts," and that the prudential committee shall assess such taxes " on the list of the inhabitants of such districts." These provisions were copied from the revised statutes of 1839, and are substantially the same that have been all along used in the general statute defining the power of the district to vote taxes, and the duty of the committee in assessing them upon the list. They were incorporated into the statute while the liability to taxation in a school district depended wholly upon the residence of the person taxed in the district, and his having a list in the town, and evidently, in strict and literal sense, are appropriate only to that rule, and, unless controlled by subsequent enactments, would probably require the construction claimed by the plaintiff. We are of opinion however that the act of 1847, quoted above, was passed for the purpose, and had the effect to change the law in relation to the basis of taxation in school districts, and of course the power of the districts and the duty of the committee in voting and assessing school taxes. The language of that act is clear and explicit, " the listers are to set the appraised value of all real and personal estate in each district severally," and " such appraisal shall be the grand list for said district, until another grand list shall be made as required by law."

The purpose and object of this act is plain, that when the grand list of a town was perfected, it should upon its face show every tax payer's list set or designated in some one of the school districts of the town, and not only be a perfected basis of taxation for the town, but also upon its face show the grand list of each school district, which should be as permanent for the district as the whole list for the town.

The evils of the former mode of assessing school taxes were numerous. The school districts could never be certain in relation to what expenditure they could safely incur, as their list was constantly liable to change, by the removal of any person, or number of persons from the district. It was often a nice and difficult matter for districts to determine whether persons had

removed from the district, so as not to be liable to be taxed, or were only temporarily absent from it, and all such persons as chose to remove out of the district, rather than pay an anticipated tax, were always enabled to do so. So all persons who removed out of town after their lists were taken, avoided all taxation for the support of schools for the year, and by an annual removal avoided all taxation for that purpose. Hence the legislature wisely provided for making a permanent list for each district, so that each district might know in advance its resources for the year, and its officers ascertain its list by mere inspection of the grand list of the town, without taking a census of the district on the occasion of assessing every tax, and determining who were residents of the district at the time, at the peril of making their tax illegal, by not judging correctly.

The act of 1847 did not, in terms, provide that school districts should vote, or their prudential committees assess their taxes upon the list of the district when so perfected, but that such became their legal duty, we think can not be doubted. If that were not so, then all these duties so carefully prescribed to the listers, would become wholly nugatory, for no school tax could be raised, except by being voted by the district and assessed by the committee. School districts and committees were as much bound to conform to this change of the lists of their districts as if expressly directed to do so by the act itself.

If any doubt could exist as to the soundness of this view, the act of 1851, before referred to, expressly enacts that all district taxes shall be voted and assessed on such list for the year, and repeals all prior laws inconsistent with itself.

This act was evidently passed mainly for the purpose of fixing the particular list, on which taxes voted after the 15th of May should be assessed, and shows rather what the legislature understood the law to be, than any intention to change it, but still in terms it is an express enactment, and would so make the law, if it was not so before.

These views in relation to the act of 1847, and the duty of the listers under it and the effect of their action upon the rights and duties of school districts, are supported by the cases of *Fairbanks & Co.* v. *Kittredge et al.*, 24 Vt. 9, and *School District No. 1, in St.*

*Johnsbury* v. *Kittredge*, 27 Vt. 650. In the first of these cases it was held that the listers were liable to any person who was injured by their designating his list for personal estate in a wrong district, and in the other that the listers were liable to the school district in which the estate should have been set, for their loss sustained by having their grand list diminished to that extent.

Both these cases proceeded and were determined upon the ground that such designation of personal estate in the list of a particular district was conclusive, and made it a part of the list of that district, even though improperly done, so that the owner was obliged to pay taxes upon it in that district, and the district properly entitled to have the estate designated in its list, lost the power to assess taxes upon it. Though this was not the precise point in decision in either case, still it seems a necessary result of what was decided, and this view is clearly supported by the language of the judges who pronounced the judgments of the court.

But the plaintiff's counsel insist that if this be the sound view of the law as it stood while the act of 1847 was in force, the act of 1847 is not now to be treated as in force, but it was repealed by the act passed in 1855, before referred to. That act makes some new provision as to the time of making the general appraisal of real estate, and various other modifications in the manner of making up the grand list. In that part of the act, directing when and how the appraisal of real estate shall be made, is incorporated substantially the same provision contained in the act of 1847, as to designating real estate in the several districts, but nothing is provided as to designating personal estate. The act of 1855 repeals no previous law, by name, or by direct reference to it, but in general terms repeals all previous acts inconsistent with itself.

Whether then, this provision in the act of 1847, for designating personal estate in the list of the districts, is repealed by the act of 1855, depends wholly upon the consideration of its harmony with, or repugnancy to, some provision of the latter act.

The only part of the act which is claimed to have that effect, is the provision for designating real estate, and the absence of any such, as to personal estate. But are the two things incon-

sistent with or repugnant to each other, so that both can not stand together and both be carried out and enforced together ?

We think this can not well be claimed, when both were contained in the act of 1847, and both were confessedly in force up to the passage of the act of 1855, and as it seems to us, both stand very much upon the same principles, and the law on this subject is made more harmonious and symmetrical by having both stand together.

We therefore conclude that the act of 1847 is' still in force, and that the plaintiff was still liable to be taxed in district number seventeen, where his list was taken and designated, though he had removed from the district.

This matter of taxation is one in which almost every body is interested, and the shifts to avoid it are so numerous and ingenious that almost every legislature make more or less alterations in the law upon the subject, to remedy newly discovered evils, and often without much reflection as to their effect upon the general system, and generally without repealing any previous law by name or in terms, so that it often becomes exceedingly difficult to determine in this mass of confused legislation what the state of the law really is upon a given point.

The view we have taken of this part of the case renders it unnecessary to consider the point made by the defendant as to his being protected under his warrant, provided the committee were wrong in assessing a tax against the plaintiff.

As to the objections made to the form of the defendant's plea, we think they are not fatal to it on a general demurrer, though it doubtless would have been held defective on a special demurrer. The existence of the school district was a fact necessary to be alleged in the plea; it is not alleged in direct language, but in an argumentative way merely. But if a necessary averment is alleged argumentatively, it has been considered necessary to point it out by a special demurrer in order to take advantage of it. See *Catlin* v. *Lyman et al.*, 16 Vt. 44; *Adams* v. *Hyde*, 27 Vt. 221.

The result is, that the judgment of the county court is *reversed*, and judgment rendered for the defendant.