HORACE H. DYER ET AL. v. SCHOOL DISTRICT No. 1 ET AL.

*Chancery. Parties. Jurisdiction. School District. Division of Property.*

1. An objection to the right of the court to allow the introduction of a new party by amendment must be insisted upon before a trial upon the merits.

2. Equity will not interfere to prevent a multiplicity of suits, when such suits would be between different parties, although the issue in each case must be determined by the same state of facts.

3. District No. 1 voted to build a school house, located it, appointed a building committee, and raised a tax to defray the expense. A portion of the district, being dissatisfied with the location, subsequently procured themselves to be set off as district No. 2 by the town. Before this action of the town, the building committee had made contracts for the new house to an amount exceeding the amount of the tax, and the house was subsequently built. *Held*, that the collection of this tax from the residents of district No. 2 would not be enjoined, and that district No. 2 could not maintain a bill for an accounting between the two districts, and a division of the property.

This was a suit in chancery, returnable to the March Term, 1872, Rutland County, brought by Horace H. Dyer and four others, "all being inhabitants and tax-payers in the present school district No. 2, in Rutland, who bring this bill in behalf of themselves and such tax-payers in said school district as may choose to come in and participate in the proceedings thereon, and contribute to the expense thereof."

The bill alleged in substance that districts Nos. 1 and 2 in Rutland were originally one district known as district No. 1; that on the 15th of April, 1871, said district voted to build a school house and to purchase a lot of land for the same, located the school house on the Blanchard lot, appointed a building committee, and voted a tax of seventy-five cents on the dollar of the grand list of the district to defray the expense of building said house, and that said tax should be collected and

paid into the treasury before July 1st ensuing; that the town of Rutland by two special town meetings, held on the 5th and 27th of June, 1871, divided said original district into two school districts to be known as district No. 1 and No. 2 ; that after the vote to build a school house, and before the vote of the town dividing the district, original district No. 1 had purchased a lot for a school house, and materials for the same, and that after the vote of division and before the bringing of this suit, said district had purchased other material, and made contracts for the building of the school house, and begun its erection.

That Stephen Clemons was the collector of original district No. 1, and as such held a rate bill and tax warrant for the collection of said tax of seventy-five cents on the dollar, which he had demanded of the orators, and was about to collect.

That the location of the school house on the Blanchard lot was unfair and one-sided, and that this was the main reason for the division of the district.

The prayer of the original bill was as follows : " That the said Stephen Clemons and the said school district No. 1 may be restrained and enjoined from collecting said seventy-five cent tax, or causing the same to be collected against your orators and the tax-payers of said new school district No. 2, and upon their lists of property situate in said district No. 2 on April 1, 1871 ; and that an accounting be ordered between said districts Nos. 1 and 2, and a fair and equitable division of the assets and property of said original district No. 1 be made between said new districts by a proper and suitable person to be appointed by this Hon. Court."

Upon the filing of this bill an injunction was granted against the said Clemons, which, however, was dissolved upon the filing of an answer by the defendants the following January.

The case was now continued from term to term until until 1886, when at the March Term the defendant, school district No. 1, filed a motion to dismiss for want of prosecution. Thereupon the orators moved for leave to amend their bill by making

(7)

the said district No. 2 a co-orator. The court overruled the motion to dismiss, and, against the objection of the defendant, permitted the amendment. The defendant now filed an answer to the entire bill as amended, in which it insisted that the court had no authority to allow the amendment making district No. 2 a co-orator, and craving the same benefit of that objection as though made by plea or demurrer. As to the facts in issue, the answer alleged that the division of the original district was procured, after the vote to locate the school house, by those resident in present district No. 2 for the reason that they were dissatisfied with such location, and that after the vote to build the school house and before the vote of the town dividing the school district, the district had contracted debts in and about the construction of said school house to an amount exceeding the sum realized from the tax of seventy-five cents on the dollar. This answer was traversed, and a large amount of testimony taken by deposition; and the case came on for hearing at the March Term, 1887, on the pleadings, testimony, motion to suppress testimony, and stipulations. Taft, Chancellor, dismissed the bill, *pro forma.* Appeal by the orators.

*John Prout* and *W. C. Dunton,* for the orators.

The seventy-five cent tax was not voted to pay any debt then existing against the district. The liabilities which had been incurred by the district under that vote were all after the matter of dividing the district had begun to be agitated, and after a town meeting for that purpose had been called. They were contracted for the sole purpose of compelling district No. 2 to pay a portion of this expense. The vote of the town did not contemplate this, and this court should carry out the intention of that vote as to property. R. L. s. 380 ; *Hutchins* v. *Moody,* 34 Vt. 433 ; *Cummings* v. *Hill,* 56 Vt. 384 ; 1 Dillon Mun. Cor., 3d ed., sec. 290 ; *Stoddard* v. *Gilman,* 22 Vt. 568.

If the town was mistaken as to its power to divide by vote the assets of the district, equity should effectuate the intention of the parties. *Potter* v. *Chapin,* 6 Paige Ch. 639.

R. L. ss. 549, 550 provide for the distribution of assets upon the division or dissolution of a school district. These provisions were not enacted until after the division of this district, but they ought to have a retroactive effect, being merely remedial in their nature. *Bellows* v. *Weeks*, 41 Vt. 590 ; Wade on Retroactive. Laws, ss. 24, 242 ; *Densmore's Appeal*, 59 Pa. St. 374.

The objection to the right of the court to grant the amendments was waived by the answer. *Wade* v. *Pulsifer*, 54 Vt. 45 ; *Ross* v. *Shurtleff*, 55 Vt. 177 ; *Paine* v. *Slocum*, 56 Vt. 504.

*James Barrett* and *C. A. Prouty*, for the defendant.

I. Suppose that this tax is illegal, will a bill lie to restrain its collection ?

Courts granting this relief seem to have done so on two grounds ; first as removing a cloud from the title to real estate, as where the abutting lots upon a street are assessed for its improvement ; secondly, to prevent a multiplicity of suits. There is no allegation or proof that any of these orators are the owners of real estate affected by this tax. The multiplicity of suits which the court will interfere to prevent, is between the same parties. If this tax was illegal, each one of these orators could maintain one suit, and no more. These orators may have a common interest in the result of this suit in the sense that if one can recover, all can. But they have no such community of title as will warrant the bringing of a joint suit in their joint names. In those jurisdictions in which the equity practice is most in harmony with ours, such bills are not entertained. *Cutting* v. *Gilbert*, 5 Blatch. 259 ; *Sheldon* v. *School Dist.*, 25 Conn. 224 ; *Dodd* v. *Hartford*, 25 *id.* 232 ; *Youngblood* v. *Sexton*, 32 Mich. 406 ; *Heyward* v. *Buffalo*, 14 N. Y. 534 ; *Dows* v. *Chicago*, 11 Wal. 108 ; *Brewer* v. *Springfield*, 97 Mass. 152 ; *Lord* v. *Charlestown*, 99 *id.* 208.

But this tax was not invalid. It is conceded to have been valid when laid ; at what point of time did it become invalid ?

A tax voted before the act of the town setting off can be enforced against those set off afterwards. *Ovitt* v. *Chase*, 37 Vt. 196 ; *Stevens* v. *Kent*, 26 Vt. 504.

II. Can this bill be maintained for an accounting between the two school districts, or between district No. 1 and the individual tax-payers in district No. 2 ? Certainly it cannot on the part of the individual tax-payers. The property of a district belongs to the corporation, not to the individuals. When an inhabitant removes from, or is set from the district, he does not become entitled to take with him an aliquot part of the property ; if so, what part ?

Neither can the district claim an accounting as a district, for the only title which district No. 2 has to this property is derived from those residing within its limits; and if they have no title they can give none.

In the case of these *quasi* municipal corporations, like towns and school districts, the authority dividing has authority to apportion the assets of the municipality held for municipal purposes ; and if it neglects to so apportion, then the real estate at least, and this district had no other property, belongs to that portion of the municipality within whose territorial limits it is. Dillon Munic. Cor. secs. 188, 189 ; *School Dist. No. 1* v. *Richardson*, 23 Pick. 62 ; *School Dist. No. 6* v. *Tapley*, 1 Allen 49 ; *Laramie Co.* v. *Albany Co.*, 92 U. S. 307 ; *North Hemstead* v. *Hemstead*, 2 Wend. 109.

The town or the legislature was the only tribunal having authority to apportion this property. No. 2 procured itself to be set off without procuring at the same time such an apportionment. The aggregate number of inhabitants composing No. 2 stands exactly as a single individual would who had voluntarily withdrawn from No. 1.

III. The court had no authority to grant the amendment making district No. 2 a co-orator. The suit was thereby converted into an entirely different suit, viz., one for an accounting between the districts. The original orators would no longer be proper parties, either as orators or defendants. We submit that even

a court of chancery has no right to strike out all the orators and call in entirely new ones, when the original orators would no longer be proper parties in any capacity.

The opinion of the court was delivered by

Royce, Ch. J. It appears from the pleadings and proofs that the school house in district No. 1 in Rutland was burned in 1866 or 1867, that various attempts were made by the district and through the intervention of the selectmen of the town to procure a site upon which to erect a new house, but no such site had been secured prior to April, 1871. On April 15, 1871, at a meeting of said district, it was voted to build a new school house and to locate the same on the Blanchard lot, where it was subsequently built. It was voted to take or purchase the land, and to raise a tax of 75 cents on the dollar to pay the expense of the building, and a building committee of three, of which the orator Dyer was one, was elected, and instructed to build a good house.

The principal controversy at that meeting was upon the question of the location of the school house, and the meeting was attended by nearly all the voters in the district. The voters in the south part were anxious that it should be located further south than the Blanchard lot, and some of them in conversation, both before and after, expressed a determination that if the house should be located as far north as the Blanchard lot, they should endeavor to have the district divided; but it was not generally known by the voters of the district that any such attempt would be made, and there was no fraudulent or improper means employed to influence votes at that meeting; nor does it appear that any attempt was made to procure a reconsideration or recision of the vote.

The building committee appointed at said meeting soon after and before the division of said district and the formation of district No. 2 as hereinafter stated, purchased for the district the Blanchard lot, gave in payment therefor an order on the treasurer of the district for $500, and made contracts for most of the

labor and materials necessary to build said house; and it has been completed at an expense of about $2,300, exclusive of the $500 paid for the land.    There has been received on the tax voted April 15, 1871, and on a ten per cent tax voted at the annual meeting in 1871, $1717.90, and the current expenses of the district for the year 1871, including the payment of $20 on a debt which accrued in 1866, and exclusive of any liability on account of the new school house, were $288.61.

On June 5, 1871, a town meeting of the town of Rutland was held at which, under an article in the warning to " see if the town will vote to divide district No. 1," it was voted that said district be divided, and a committee was appointed to divide the assets of said district fairly and justly between the districts to be formed out of said district, and to fix and define the boundaries of said new districts.    Said committee established a dividing line through said district, and made report of their doings at a special meeting of the town, which was accepted and adopted, constituting the territory in district No. 1 lying south of the line established by said committee a school district to be designated as district No. 2.    It does not appear that said committee attempted to divide the assets of district No. 1, as it was contemplated they should do by the vote appointing them, and in fact said district did not have any assets at that time, nor had it at the time of hearing, except the school house and the land upon which it is located.    With reference to these it has been held that when a school district is divided, the school house will belong to that one of the new districts within whose boundaries it is situated.    *School Dist. No.* 1 v. *Richardson*, 23 Pick. 62. At the time of the meeting there was no statute providing for a division of assets in case of the division of a school district, but such a statute was passed the following year.  Laws of 1872, No. 13.    Nothing in the language of that statute indicates it was intended to be retroactive in its operation, and it provides for a special means for carrying out its provisions.

The vote dividing district No. 1, and constituting district No. 2 was procured by persons who were then inhabitants of the

south part of district. No. 1. A rate bill of the tax of 75 cents on the dollar voted at the meeting of April 15, 1871, was made out and placed in the hands of the collector of taxes for district No. 1 for collection.

This bill was made returnable to the March term, 1872, of the Rutland County Court of Chancery, and was brought in behalf of five inhabitants and tax-payers residing in district No. 2, and such other tax-payers in said district as might choose to come in and participate in the proceedings thereon, and contribute to the expense thereof; but it does not appear that any other tax-payers did ever become parties in the suit. The prayer of the bill was that the collector of district No. 1 might be enjoined from the collection of said tax, and that an accounting might be ordered between said districts, and that an equitable division might be made of the assets and property of district No. 1 between the two districts. One reason alleged in the bill for granting the injunction was that it would avoid a multiplicity of suits. An injunction was granted, but upon an answer being filed, it was dissolved, and the collector then proceeded to collect the tax of the tax-payers residing in district No. 2, the tax-payers paying the same under protest.

At the April term, 1886, leave was granted the orators to make district No. 2 a co-orator, and to make amendments to the charging part of the bill, and to the prayer. The amendment allowed to the prayer was: " Or that district No. 1 be decreed to pay district No. 2, or such of the inhabitants thereof as paid said taxes against them, their just and equitable share of the cost or value of the school house, and all other property constructed with or paid for in whole or part from the avails of said taxes assessed and collected as assessed, and their just share of all other property belonging to district No. 1; or else to pay district No. 2, or such of the inhabitants thereof as paid said taxes, their just and equitable share of the proceeds of all said taxes collected."

The bill as amended was fully answered, and it was claimed by the answer that the amendments were improperly allowed;

and the defendants prayed that they might have the objection to them considered the same as if it had been made by demurrer or plea. The answer was traversed and a large amount of testimony taken.

The original bill could not be maintained for the relief of the tax-payers for whose benefit it was brought, for it is not denied that the taxes paid by them were legal taxes, and were appropriated for the purpose for which they were legally voted. The rule that a court of equity will interfere to prevent a multiplicity of suits is not applicable, as there would appear to be no danger of a multiplicity of suits between the parties to the bill, but only a possibility or probability that other persons, not parties, might bring other suits for the enforcement of rights asserted by them upon substantially the same basis of fact. The Court of Chancery could acquire no jurisdiction, then, upon the ground of preventing a multiplicity of suits.

District No. 2, as we have seen, was made a co-orator by the amendment allowed. Much has been said in argument upon the power of the court to allow the amendment, and whether, if the court did not have such power, the objection was waived by the answer made, or the want of a proper plea. The question of proper parties should have been made and determined before the incurring of expense in the trial of disputed questions of fact; and so, without determining the questions made pertaining to the amendment, we deem it best to treat district No. 2 as an orator in the suit. And so treating it, what are its equitable rights against district No. 1?

The tax was a legal one, and when voted and assessed it became the duty of the tax-payers then resident in district No. 1 to pay the taxes assessed against them. *Ovitt* v. *Chase*, 37 Vt. 196; *Woodward* v. *French*, 31 Vt. 337. The claim now made in substance is, that the taxes paid by those then residing in district No. 1, who had become residents of district No. 2, at the time the taxes were paid, shall be paid back to them, or to district No. 2, by district No. 1. The inhabitants of district No. 2 procured the division of district No. 1 and thus prevented them-

Dyer *v.* School District.

selves from deriving the benefit they would have been entitled to from the expenditure of the taxes if they had remained in district No. 1. It is asking a court of equity to decree the refunding of taxes which were legal in their character, and which have been legally expended. District No. 2 has no stronger equitable claim against district No. 1 than an individual tax-payer would have who had contributed to the erection of a school house by the payment of taxes while a resident of the district where the house was situate, to have such tax refunded for the reason that he had voluntarily removed from that district and become a resident of another.

*We have been unable to discover any equitable enforceable claim that the orators have against district No. 1, and the decree of the Court of Chancery, dismissing the bill with costs, is affirmed, and cause remanded.*