JOHN S. RICHARDSON *et al.* v. THE SOUTH WESTERN COTTON SEED OIL COMPANY, *a corporation.*

(Filed June 7, 1905)

1. EVIDENCE—Records—Estoppel. Where a party voluntarily offers in evidence the record, pleadings, instructions, and journal entry showing the final adjudication of a former action between himself and another party, for the purpose of establishing his defense in the case at bar, he vouches for the authenticity, credibility and correctness of the record, and is estopped from introducing evidence to impeach the validity or correctness of such record, and objection to such testimony is properly sustained.

2. EVIDENCE—Admissions of Party—Writings. Where a party to sustain his defense introduces letters, containing certain statements in regard to the matter at issue, which if not true he would naturally deny, and where no reply to such letters denying such statements is introduced, such statements are evidence tending to show that they are true. So where there has been a correspondence between parties in regard to subject-matter, and one of the parties writes a letter to the other making statements in regard to such subject-matter of which the latter has knowledge, and which he would naturally deny if not true, and where he wholly omits to answer such letter, and where such letter is introduced to sustain a defense interposed by the party to whom such letter s written, such silence is evidence tending to show that the statements were true.

(Syllabus by the Court.)

*Error from the District Court of Lincoln County; before Jno. H. Burford, Trial Judge.*

A. J. Rittenhouse and E. A. Foster, for plaintiffs in error.

Hoffman & Embry, and Flynn & Ames, for defendant in error.

### STATEMENT OF FACTS.

This was an action originally brought in the district court of Lincoln county by the Southwestern Cotton Seed Oil Company, defendant in error, against John S. Richardson and wife, plaintiffs in error, to foreclose a real estate mortgage. To this petition the defendants filed an answer admitting the execution, acknowledgment, and delivery of the instrument, and pleading as their only defense, payment. The plaintiff replied by general denial. In order to sustain the burden of proof which rested upon the defendants under the plea of payment, they introduced the pleadings. instructions, verdict, and journal entry in a case which had previously been tried in the district court of Lincoln County, and affirmed by the supreme court of the Territory, wherein the Bank of Stroud was plaintiff, and the defendants and the plaintiff in this case were defendants. Under the record as thus introduced in evidence by the defendants, the court held that the defendants in the case at bar were bound by the findings in that case, and that the verdict in that case estopped the defendants in this case from claiming payment, and the court directed the jury to find a verdict in favor of the plaintiff for the amount due on the note and mortgage described in the petition, and ordered a foreclosure, to which action the de-

defendants excepted.   Motion for new trial was filed in due time, considered, and overruled, and judgment rendered on the verdict, to which action the defendants excepted, and bring the case here for review.

Opinion of the court by

IRWIN, J.:   A careful examination of the pleadings, instructions, verdict and journal entry in the case of Bank of Stroud against the parties in this case, as introduced in evidence by the defendants in this case, will show that the contention in that case was that the Bank of Stroud had advanced money to operate a gin at Davenport, on which the plaintiff in this case held a mortgage; that it was agreed that the seed from this gin should be shipped by Richardson to the oil mill, and that the oil mill or oil mill company, which is the plaintiff in this case, should retain out of the proceeds of the cotton seed so shipped to them by Richardson, the sum of five dollars per ton, and remit the balance to the Bank of Stroud; and that in the event that Richardson, at the end of the season, had paid the Bank of Stroud in full, the oil company should then   remit this five dollars   per ton and apply it on Richardson's indebtedness, but if Richardson had not paid the bank in full, then the oil company should pay over this five dollars per ton to the Bank of Stroud.   The evidence on the trial of the Bank of Stroud case, showed that the five dollars per ton held by the oil company was between four hundred and six hundred dollars, and the jury returned a verdict against the oil company for five hundred dollars, being the amount in defendant's hands which was to be applied on Richardson's debts, in the event it did not go to the Bank of Stroud.   Richardson claimed in that case that the

agreement was practically that as stated by the Bank of Stroud, with the exception that he denied that the five dollars per ton was to be paid by the oil company to the Bank of Stroud on any shortage or indebtedness of his, but claimed that it was in any event to be applied on his mortgage indebtedness. The verdict of the jury was in favor of the Bank of Stroud, and against the oil company for five hundred dollars, thus sustaining the contention of the Bank of Stroud as to the agreement under which the oil company retained this five dollars per ton on the price of the seed. The judgment of the court was in accordance with the verdict of the jury. From this judgment the oil company appealed to the supreme court of the Territory, and the case was affirmed, whereupon the oil company paid the judgment. Now we take it that when the defendants in this case voluntarily introduced as evidence to sustain their defense of payment, the record in the case of the Bank of Stroud against Richardson and the oil company, that they vouched for the authenticity, competency, and credibility of that record, and that they cannot now be heard to question the correctness of the judgment in that case. An examination of the record will show that in the reply of the Bank of Stroud contained at page 41 of the record, this statement is made:

"That the amount reserved by defendant Southwestern Cotton Seed Oil Company of $5 per ton on the market price of said cotton seed should first be applied to whatever balance, if any, was due plaintiff on account of money so advanced and the said interest thereon, and if the said amount so reserved by said defendant Southwestern Cotton Seed Oil Company should be insufficient to pay said balance, then defendants were to pay same out of other funds; and if there should be no balance due to said plaintiff upon the said final settle-

ment, then said defendant Southwestern Cotton Seed Oil Company should retain the amount so reserved by it, and apply the same on the mortgage indebtedness owing by the said J. S. Richardson to the said Southwestern Cotton Seed Oil Company."

This statement being in the pleadings in that case, and being denied by the defendants in that case, was one of the issues to be tried by the jury, and when the defendants in this case introduced that record and the findings of that jury, which have become final by being affirmed by the supreme court, we think they are estopped from denying that that was the agreement between the parties.  While it is true that this statement is contained in the reply of the plaintiff, and is not a pleading drawn or authorized by the defendants in this case, nevertheless, it is a part of the evidence voluntarily introduced by defendants in this case, to sustain their defense. There is no claim in the pleadings, or in the evidence in this case that any payment of this mortgage or any part of it was made by the defendants in any other manner than that described in the record in the  case of the Bank  of Stroud. That is, that the payment made by them was by the amount retained in that case by the Cotton Seed Oil Company for cotton seed furnished them by Richardson and retained by them in making their remittances to the Bank of Stroud under the arrangement described in the pleadings in that case.  Now it seems to us the whole question is: Was this credit, which was apparently in the hands of the Cotton Seed Oil Company in the account of Richardson with them, an absolute payment upon this mortgage, or was it dependent upon the outcome of the litigation  between the  defendants and the  Bank of Stroud?  It seems to us that the defendant Richardson has

introduced the evidence which clearly supports the contention of the Cotton Seed Oil Company, that this credit was to be applied only upon condition that the litigation then pending between the Bank of Stroud and these defendants should determine that nothing was due from Richardson to the Bank of Stroud; and we think that the assignment of error that the court excluded the oral testimony of Richardson as to what the agreement was between him and the Cotton Seed Oil Company, as to the balance in their hands was not well taken, for the reason that the pleadings in the case of the Bank of Stroud clearly sets up what the contention of the different parties was as to this matter; and the verdict of the jury and the decision of the court, when affirmed by the supreme court on appeal, was conclusive, and that the court was correct in excluding any evidence on the part of Richardson tending to impeach, vary, or contradict that record as introduced by him. Then again, we find in this record that several letters written by the plaintiff to Richardson were introduced by the defendant. A quotation from one of these letters so introduced by Richardson is as follows:

"You understand of course, that this credit of $614.40 is involved in the litigation with the Bank of Stroud, and we will, of course expect to be protected on that." (Record page 16.)

The date of this letter was December 21st 1900. And again on the same page of the record we find the following from a letter dated July 30, 1902, from the Oil Mill Company to Richardson:

"You will remember that in our effort to befriend you we became entangled in a lawsuit over this matter, and that there is now a judgment of $500 against us. With your knowledge

and consent the money received out of that season's business has been held to await the result of this lawsuit, and we will, of course, expect you to pay whatever our losses may be on that account, all of which you have understood all the time. I therefore don't think you should want the mortgage released until the indebtedness has been finally discharged.  As you knew at the time, no credit was made on the mortgage indebtedness, owing to the pendency of the lawsuit.  As soon as that matter has been settled up we will take pleasure in releasing the mortgage."

Richardson voluntarily offered these letters in evidence. and does not offer any replies or any denial that the position maintained in these letters was not true.  In fact the record fails to show any denial of this position.

Also we find a letter introduced by the defendant Richardson, received by him from the Cotton Seed Oil Company, which reads as follows:

"Oklahoma City, Okla., Oct. 15, 1902.
"Mr. J. S. Richardson,
    "Chandler, O. T.
"Dear Sir:

"As you have doubtless heard, the supreme court affirmed the judgment in favor of the Bank of Stroud against the oil mill for $500.00 and we have paid the judgment.  Will you be in a position now to pay this amount, or will you prefer to have an extension of time on it?  We shall be glad to accommodate you in any reasonable way regarding the matter.  Please let us hear from you promptly, and oblige,
                    "Yours truly,
                        "C. B. Ames."

Now the defendants introduced all of these letters as tending to prove their case, and it is apparent that the only claim of payment relied upon by the defendants was the balance of $614.40, showed to have been on the books of the com-

pany.   This is apparent from the statement of counsel for
the defendants in the court below, as on page 55 of the record,
in answer to the question of the court, "Do you contend he is
entitled to credits other than those mentioned in the $614?"
Answer by Mr. Rittenhouse, "No, but I want to show that it
was paid out of the proceeds of another business."   These
letters have been introduced by the defendants to sustain their
defense, but the defendants have wholly failed to offer in evi-
dence any letters or letter from them to appellee, wherein they
dispute the correctness of the statement contained in the
above communications, or interpose any objection thereto.
The silence of the defendants relative to the manner of ap-
plying the credit fund withheld by appellee awaiting the
result of the litigation with the Bank of Stroud, was an in-
cident that the court might have properly concluded to be
an acquiesence and submission.

   But it is contended by the defendants that the case of
the Bank of Stroud cannot be treated as *res adjudicata* for
the reason that in this case one of the defendants was not a
party to that case; but we take it that where the parties de-
fendant are not identical with the parties defendant to an-
other action involving the same question yet where all the par-
ties join in offering in evidence in support of their defense
the record and judgment in a former case, that they are all
equally bound by that judgment.   And we think this assign-
ment of error is not available here for another reason, and
that is that nowhere in the record does it appear that any ob-
jection was made to the introduction of this testimony by the
defendant Martha Richardson.   Nowhere in the trial was it
called to the attention of the court that such evidence was
not competent as against her, although she was present and

represented by the same counsel as the other defendant, and must have been cognizant of all that took place in that trial; and further, that in the motion for new trial this question is not raised, and is raised, if raised at all, for the first time by the brief of counsel for plaintiffs in error in this court; and under the oft repeated and well recognized rule of this court, such assignments of error will not be considered by this court. We take the rule to be well established, that where a party to sustain his defense introduces letters written to him by the opposite party, and these letters contain statements concerning the matter in litigation, and statements which are at variance with his present contention, and no reply is made to these statements, and no denial is made thereof, that such fact of want of denial is evidence tending to show that the statements were true. In *Fenno v. Weston,* 31 Vt. 344, the court speaking by Justice Aldis, said:

"The omission of a party to reply to statements in a letter about which he has knowledge, and which, if not true, he would naturally deny, when he replies to other parts of the letter, is evidence tending to show that the statements so made and not denied are true. So where there has been a correspondence between parties in regard to some subject-matter, and one of the parties writes a letter to the other, making statements in regard to such subject matter, of which the latter has knowledge, and which he would naturally deny if not true, and he wholly omits to answer such letter, such silence is admissable as evidence to show the statements to be true."

In *St. Joseph Hydraulic Company v. Globe Tissue Paper Company,* 59 N. E. 995, the court said:

"There are circumstances, however, under which unanswered letters are competent evidence of admission by ac-

quiescence of the statements therein contained. * * * The letter under consideration informed appellant of the terms and conditions upon, and purpose for which the check for $500.00 was sent. Appellant did not return the check, or refuse to accept same, or make any objection to, or denial of the statements in said letter, but received the money on the check, thus acting upon the letter. Under such circumstances, it is clear from the authorities last cited that the letter and check were admissible."

In the case of *Taylor v. Butters and Peters Salt & Lumber Company,* 61 N. W. 5, the court, passing upon a charge to the jury, which was objected to on the part of the appellant, and assigned as error in the appellate court, and there held not to be well taken, say:

"Upon this subject the court instructed the jury that if they found that the defendant rendered monthly statements showing its measurements, and accompanied each statement with a check for the amount shown to be due by them, that plaintiff received these without objection, and remained for any considerable time silent, appropriating the proceeds without objection to the measurements,—he would be estopped by such silence from afterwards questioning them in the absence of fraud or mutual mistake."

Now it is apparent from these letters, introduced by the defendant, that he was aware of the fact that the Cotton Seed Oil Company believed and understood their arrangement and agreement to be that they were to retain this five dollars per ton on cotton seed to await the action of the litigation between the Bank of Stroud and themselves, and that in the event a judgment was found against them and in favor of the Bank of Stroud, that this credit on their books in favor of Richardson was to be paid by them to the Bank of Stroud, and was then not to be a credit upon the mortgage

indebtedness. This understanding is made so plain by these letters as to be beyond all question. Now we take it that when the defendant Richardson received these letters, and was apprised of their understanding of the contract, and remained silent and led them to believe by his silence that that was the true construction and understanding of the contract, and when he has introduced the proof of this fact himself, that he is now estopped from denying that that was the true contract.

Now as to the case of the Bank of Stroud being a bar to this case, we think the true rule in such cases is laid down by the supreme court of Minnesota, in the case of *Dixon v. Merritt,* 21 Minn. 196, where the court say:

"Without undertaking to lay down any general rule, applicable to all cases, by which to determine what questions are, and what are not, settled by a former adjudication, it will be sufficient for the purposes of this case, to say that in order that a judgment in a former action should bind parties and privies, by way of estoppel, in a subsequent action, it must have directly decided a point which was material in such former action, and is in litigation in the latter."

That the same identical question being litigated in this case was litigated in the case of the Bank of Stroud is apparent by the instructions of the court in that case, quoted on page 51 of this record. The issue was whether or not the oil company should be required to pay over to the Bank of Stroud the five dollars per ton balance in its hands. The instruction is as follows:

"It appears from the uncontroverted evidence that during the period that the bank was advancing money to purchase cotton at Richardson's gin, that the oil company received the cotton seed from the gin and used the same and re-

mitted the proceeds of sale to the Bank of Stroud, less the sum of $5.00 on each ton of seed which was retained by the oil company to be credited on the indebtedness of Richardson to the oil company. The bank contends that by the terms of the oral agreement entered into by the bank, the oil company and Richardson, that, if the amount remitted to the bank as proceeds from sale of the baled cotton and from the proceeds from the cotton seed was insufficient to repay the bank for all advances made by it to Ament in said business and three per cent. per month on the daily balances while its money was invested, then the oil company should first apply the amount retained by it as the $5.00 per ton on the seed to be the payment on any such balance due the bank. If you find from a preponderance of the evidence that the bank has proved this state of facts, and that there is a balance yet due the bank under said agreement, it will then be your duty to ascertain what the sum retained by the oil company from the proceeds of cotton seed from Richardson's gin amount to, and return a verdict in favor of the bank against the oil company for such sum, unless the sum of the amounts so retained should be in excess of the sum you find due on the balance to the bank, in which event your verdict should be for the balance due the bank. But if you find that the oil company, through Wooten, did not agree to pay these sums withheld by it to the bank, and it did not agree to pay any balance that might be due the bank, then your verdict must be in favor of the Southwestern Cotton Seed Oil Company."

Under this instruction which clearly defines the issue between the oil company and the Bank of Stroud, the jury found in favor of the bank and against the oil company. On page 171, of 12th Oklahoma, the supreme court in affirming the case, say:

"Again, it was claimed that the sum of $5.00 per ton for cotton seed delivered was under certain contingencies to

go to the plaintiff. By the testimony of Mr. Wooten, one of the defendant's witnesses, this amount was shown to be about $400.00, and by the testimony of Mr. Ames the amount was shown to be $634. The jury therefore had sufficient evidence upon which to base this particular verdict."

From the instruction above quoted, the verdict of the jury in that case, and the opinion of the supreme court, it is apparent that out of the money retained by the oil mill it was compelled by that judgment to pay $500 and interest, the indebtedness from Richardson to the bank of Stroud; and if this was done, it cannot reasonably be said that the same could be applied on the indebtedness which Richardson owed the oil company. So we think it apparent that the claim of payment set up in the case at bar involved the same transaction which was litigated in the Bank of Stroud case, and that the case of the Bank of Stroud, when introduced by the defendants to prove their defense, is conclusive of their claim of payment, and that Mrs. Richardson, after allowing this record to be introduced in evidence to prove her defense of payment, and when she makes no other claim of payment except as shown in the records of the case of Bank of Stroud, cannot be heard to complain that this judgment is not *res adjudicata* as to her on the question of payment.

We have carefully examined the record and finding no error, the case is affirmed, at the costs of the plaintiffs in error.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.