### ADAMS v. McGRAW, Adm'r, et al.

No. 11426—Opinion Filed April 29, 1924.

**1. Specific Performance—Partition—Equity Action.**

A suit in specific performance and for par-

tition of real estate is purely an action in equity.

**2. Same—Interest in Land—Action by Party in Default.**

In an action for specific performance of a contract which provides that each party to the contract shall pay half and half to the government for the land involved, and in case either party fails to pay his part, the other party may make the payment, and thereby secure to himself the interest of the defaulting party, specific performance will not be granted if the plaintiff is the defaulting party.

**3. Same—Findings—Evidence.**

In an action for specific performance of a contract and partition of real estate, where the contract provides as above, against the nonresident widow of one of the deceased contracting parties and his minor children as his heirs, and they answer, pleading the default of plaintiff to pay his part under the contract, and the proof shows plaintiff is in default, a finding by the court that plaintiff had been guilty of such conduct as to constitute an abandonment of his rights under the contract, is not erroneous.

**4. Same—Contract to Buy Land Jointly — Plaintiff's Forfeiture of Rights by Default in Payment.**

Where a contract between two parties to buy land from the government provides, "That should either of the parties hereto default in the payment agreed to be made by him, then and in that case the other party may make the payment and secure thereby the interest of the party defaulting in his payment, and the party so defaulting shall convey to the other party, all his interest in and to the above property by warranty deed," held, that default in payment by either party and payment by the other party automatically vests in him the interest of the defaulting party.

**5. Same.**

Where the contract is as above, and before final payments are made one of the parties dies, leaving a widow and minor children as his heirs, and the administrator of his estate makes the final payments for both parties to the contract, after failure of the living party to pay his part, and over two years thereafter the living party brings suit against the administrator and widow and minor children for specific performance of contract, for an interest in the real estate, and the proof shows he defaulted in payment, held he had no enforceable rights in equity.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; Frank Mathews, Assigned Judge.

Action by Homer Adams against C. J. Mc-Graw, administrator of the estate of Robert J. Woulfe, deceased, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Dolman & Dyer, for plaintiff in error.

Cruce & Potter, for defendants in error.

Opinion by THREADGILL, C. This was a suit brought by the plaintiff in error in the district court of Carter county, Okla., on the 18th day of August, 1919, against a nonresident administrator and the heirs at law of Robert J. Woulfe, deceased, all nonresidents of this state, in the nature of specific performance of a contract and to recover and have set off to him a half interest in real estate situated in Carter county, Okla. All the defendants made personal appearance in the court and the cause was tried by court on March 12, 1920, and resulted in a judgment, March 19, 1920, in favor of the defendants.

On March 20, 1920, plaintiff filed a motion for new trial, which was by the court overruled, and the plaintiff excepted, and case is brought here by petition in error and case-made for review.

The plaintiff pleads a written contract between him and Robert J. Woulfe, made for the purpose of buying real estate in Carter county, Okla., and claims that he has performed all the conditions of said contract. That Robert J. Woulfe died between November 23, 1915, and December 15, 1915, at Newton, Harvey county, Kansas: that C. J. Mc-Graw was appointed administrator in said county, and that his heirs are Vertie J. Woulfe, widow, Lucile Woulfe, Helen Woulfe, William Woulfe, Robert Ray Woulfe, Lawrence Woulfe, Calvin Woulfe, Edith Woulfe, minors, being his only children, and Vertie J. Youman was their guardian, and he prays for enforcement of said contract against said administrator and the heirs of Robert J. Woulfe, deceased.

The contract relied upon by the plaintiff is as follows:

"This contract made and entered into this 23rd day of November, 1912, by and between Robert J. Woulfe of Newton, Kansas, and Homer Adams, of Ardmore, Oklahoma, Witnesseth that,

"Whereas, the said Homer Adams, through his knowledge of lands and land values in Carter county, has selected for purchase the land described below and bid in at the recent sale of Indian lands by the Government, in the name of Robert J. Woulfe, Tract No. 666, in the published list of lands offered at this sale, the sale tract being described as follows: The east half of the east half

of the east half, the southwest quarter of the southeast quarter of the southeast quarter, the south half of the southwest quarter of the southeast quarter, and the southeast quarter of the southeast quarter of the southwest quarter of sec. eight, (8), twp. four (4) south, range two (2) west of the Indian Base and Meridian, containing in all 120 acres, according to the Government Survey thereof, at the price of $9.25 per acre, amounting to the sum of $1,110, and,

"Whereas, The terms of the sale require the payment of one-fourth cash at the time of the sale, one-fourth in one year and one-fourth in two years, the first payment of one-fourth of the purchase price amounting to $277.50 having been paid by the said Robert J. Woulfe.

"It is hereby mutually agreed that the said Homer Adams shall pay the next payment on the land and the said Robert J. Woulfe and Homer Adams shall pay in equal parts the final payment, at which time the said Robert J. Woulfe, upon receipt of the patent to the said land, shall convey by warranty deed to the said Homer Adams an undivided one-half interest in and to the above described tract of land.

"It is further agreed that should either of the parties hereto default in the payment agreed to be made by him, then and in that case the other party may make the payment, and secure thereby the interest of the party defaulting in his payment, and the party so defaulting shall convey to the other party all his interest in and to the above property by warranty deed.

"It is further agreed that the said Homer Adams may rent or lease this land by and with the consent of the said Robert J. Woulfe, and all income derived from the property, or any profit made in case the land is sold shall be divided equally between the parties hereto, after deducting all necessary expenses incurred in handling the land or improving it.

"In testimony whereof, we have hereunto set out hands and seals this 23rd day of November, 1912."

The defendants answer, admitting the execution and legality of the contract, but denying that the plaintiff complied with the same and pleading an abandonment and forfeiture to defendants by nonpayment and laxness on the part of the plaintiff as an estoppel thereby, to claim any rights under the contract.

The plaintiff filed a reply to the answer in which he states that he complied with the contract according to the strict terms of the same, except as modified by mutual agreement in extending the payments from year to year by paying interest on deferred payments; he states that after the death of Robert J. Woulfe, the administrator and heirs had never tendered him a deed to one-half of the land, described in the contract, and he further pleads that the deceased, in his life time, waived a strict compliance of the contract in the extension of time for payment to the Government and paying interest on deferred payments, and that defendants, by their actions, had waived a strict compliance with the contract and are estopped to declare forfeiture under the same or to demand that he pay like amount due from him until they are ready and willing and in position to convey to him his interest in the property. These issues were tried to the court and the court rendered judgment, finding the issues in favor of the defendants, and finding that the plaintiff had been guilty of such conduct as to constitute an abandonment of his rights, under the contract, and that the equities of the case are in favor of the defendants.

1. The first contention of the plaintiff is that the decision or finding of the court is not in accordance with the issues.

The finding complained of is as follows:

"After being fully advised in the premises, finds the issues in favor of defendants, and the plaintiff had been guilty of such conduct as to constitute an abandonment of his rights under the contract and that the equities of the case are in favor of the defendants."

The words in this part of the decision especially objectionable are "abandonment of his rights." A legal right is a right to do or not do or to possess a thing enforceable in law. 57 Ore. 201. What were the plaintiff's right under the contract? 1st. To make second payment to the government for the land. 2nd. To pay half of the third and last payment for the land. 3rd. To have a warranty deed made to him for an undivided one-half interest in the land. The last right was conditional on the first two. The proof shows that he did not make the payments and under the strict terms of the contract would not be entitled to the third right.

On the other hand it was provided in the contract that if either party failed to make the payments as agreed the other party had the right to make the payments and automatically secure to himself the whole title. If the plaintiff failed and refused to make the payments as required by the contract, this would amount to an abandonment of his rights to make the payments, and it would follow that the plaintiff could not claim and enforce any right to have the deed

made to him without a new contract based upon proper consideration, changing the terms of this part of the contract, and by parties competent to make the same.

2. The undisputed testimony was that Robert J. Woulfe made the first payment; that the plaintiff did not make the second payment but he did pay the interest on this payment and the time of payment was extended one year, to November, 1914, at which time the second payment was due and the third was also due and the time of these payments was extended by the government to November, 1915, and the plaintiff and Woulfe paid the interest half and half on the last payment, and the plaintiff paid the interest on the second payment, and further extension of time to November 21, 1916, was granted by the government; that Robert J. Woulfe died the latter part of the year of 1915, and the administrator of his estate paid the final payment for said land November, 1916. The testimony shows that the plaintiff knew the amounts due when they were paid; that he had an opportunity to pay his part under the contract; that the administrator of the estate was willing for him to do this; that the widow of the deceased was anxious and willing for him to do this; that he did not make any part of these payments, but excused himself by promises to reimburse Mrs. Woulfe if she made the payments or loan the money to the administrator, for him to make the payments, which seems to have been the plan adopted. The testimony further shows that the contract made between the plaintiff and Woulfe was an oil and gas adventure and at the time these last payments were made to the government that the prospects for oil and gas in the locality of this land were very unpromising and continued so until 1919. Testimony further shows that during the early part of the year 1917, plaintiff and the administrator and the widow and the attorney representing the administrator had several written communications from and to each other in which the plaintiff insisted that he had a right to one half interest in this land and was willing to pay his part under the contract to secure his right if they would furnish him with an itemized statement as to the amount he should pay and also furnish him title at the time he made the payments.

The testimony shows that the plaintiff knew what the items were, that he was inquiring about, and the administrator and the attorney for the administrator, so far as they were able, were ready and willing to make title to the plaintiff as he demanded. and since the estate of Robert J. Woulfe, deceased, was being administered and there were minor children involved, they could not advise him just how the title could be perfected, and the plaintiff did not take any steps to solve this problem to obtain and perfect his title under these conditions. He could have proceeded under chapter 5, article 9, Comp. Stat. 1921, but nothing further was said and done between these parties from April, 1917, until July, 1919, and in the meantime the prospect for oil was looming in the neighborhood where this land was located and the plaintiff, on July 3, 1919, wrote a letter to B. H. Turner, attorney for the administrator for said estate, and to McGraw, administrator, claiming an undivided half interest in the 120 acres of land and furnishing them an itemized statement of the amount he should pay, including interest, under the contract, and informing them that he was willing to pay the same to get his part of this land and insisting that they have the title ready to be delivered to him, and also informing them that if this was not satisfactory he would bring suit. We think his actions, as shown by the testimony, are abundantly sufficient to sustain the finding and judgment of the court; and to show that the same was within the issues involved in the case. We have examined all the evidence as set out in the record, and we are persuaded that it is sufficient to sustain the judgment of the court, and under the long established rule of this court, where the weight of the evidence is in favor of the findings of the court, on appeal the judgment will not be disturbed.

3. The plaintiff says to constitute abandonment there must be both the intention and the material relinquishment of the property, and under this statement he cites many authorities, and we recognize these to be the law. He further states:

"The first essential element of abandonment is the intent to abandon. The law may imply the intent to abandon in two ways. First, by actual proof of the intent, such as by statement of the parties or acts of the parties or the abandonment may be inferred from lapse of time."

These are correct statements of the law but they apply to a case where the party has acquired an interest in property and not to a case where no right has vested. The proof, in the case we are considering is that the plaintiff did not comply with the conditions of payment by which he could claim or expect to have an interest

in the 120 acres of land. Before he could have any right to title he must do certain things,—pay the second payment to the government, and half of the third payment, and the proof is that he never did these things; and again the contract provided that in case of his failure to comply with these conditions and the other party made the payments the whole title automatically vested in the other party. His failure to do his part would amount to an abandonment of his rights under the contract. The plaintiff furnishes many illustrations of what it takes to constitute an abandonment and with which we are in full accord, but as we view the issues and the testimony we cannot see where they have any application to this case.

The plaintiff contends there was no abandonment because he was still claiming an interest, that there was no forfeiture because a forfeiture was not declared, that there was no laches because the law of limitation was not out, and yet the fact remains that he made none of the payments, which were the basis of any right he could have in the land, and at the time the last payments were made, 1916, the party he contracted with was dead, in the state of Kansas, the land in Carter county, Oklahoma, an administrator in that state, a widow, and seven minor children were in his place and stead, and without power to waive any of the conditions of the contract. They could fulfill it by aid of the courts but they could not waive its terms.

4. This is purely an equitable case and as suggested by the defendants in their brief and stated in Lewis v. Woods, 4 Howard. 86, 34 Am. Dec., page 110, the rule is as follows:

"Specific performance will not be decreed when the party applying has omitted to execute his part of the agreement by the time appointed unless he can satisfactorily account for such omission or the other party has expressly or impliedly assented to such delay.

"Where a party by the terms of the sale agreed to pay a certain amount in cash and give his promissory notes for the balance, and pays but a portion of the cash, and refuses for two years to pay the balance or to execute the notes, he is guilty of such negligence that he will not be decreed a specific performance." Fuller v. Hovey, 2 Allen, 324, 79 Am. Dec. 782; Combs v. Scott (Wis.) 45 N. W. 532.

5. It is plain from all the facts and circumstances in this case that the plaintiff, whatever his intentions were at the time he entered into this contract with Robert J. Woulfe, determined to defer making any of the payments on this land until some oil prospects were in sight.

The time for making the second and third payments was extended to November, 1916, which was an extension of three years' time for the payment which the plaintiff was to make, as an extension of two years' time for the last payment, which both parties were to make, half and half, and still the plaintiff was not ready to make his payment or his part of the last payment. At the time he had the correspondence with the widow and the administrator in the early part of 1917, a test for oil was being made in the neighborhood of the land which proved to be a failure, and he admitted, in his testimony, that at the time they abandoned this test that he abandoned further correspondence with these parties in Kansas, and at the time he renewed this correspondence in 1919, over two years after the correspondence in 1917, the prospects for oil in the neighborhood of this land were very promising, and then it was that he furnished the parties in Kansas an itemized statement of the amount he should pay to fulfill his contract, without demanding of them an itemized statement of how much he should pay, and he also demanded that they be ready to furnish him title or he would commence suit for the enforcement of the contract. This is a plain case where the plaintiff failed to do equity and was not in a position to ask for an equitable consideration at the bar of the court.

The judgment of the court is affirmed.

By the Court: It is so ordered.