## KNIGHT v. CECIL.

No. 15496—Opinion Filed Feb. 24, 1925.

Rehearing Denied May 5, 1925.

**1. Trial—Findings—Conformity to Issues.**

If the findings of fact and conclusions of law are consistent with the pleadings as presented or as amended, where subject to amendment by the facts proven, they are sufficient and free from objection.

**2. Joint Adventures—Action for Interest—Failure of Evidence—Finding.**

In an action based on contract of joint adventure, where plaintiff pleads that he furnished the information as to oil and gas value and testified he gave the information as to the land and its oil and gas value and furnished the facts, and defendant in his answer denied this and testified he obtained the oil and gas information from another source and that plaintiff was let in on the adventure upon his assurance that an oil and gas lease could be sold on the land for from $20 to $25 per acre, which was found to be untrue, and the court finds there was no consideration to support the cause of action. held, the finding not in conflict with the pleadings or the evidence.

**3. Same—Abandonment of Contract as Defense.**

As a defense against an action based on a contract for a joint adventure defendant may prove its rescission or abandonment. 23 Cyc. 462, F.

**4. Appeal and Error—Review of Equity Case—Sufficiency of Evidence.**

In a case of equitable recognizance, where the evidence is conflicting and the court makes findings of fact and conclusions of law, the same will not be disturbed on appeal unless clearly outside the issues and against the weight of the evidence.

**5. Joint Adventures—Withdrawal of Party—Rescission.**

A party to a joint adventure, before the contract is executed, may withdraw from it by failing to perform his part of the agreement or by the consent of the party.

**6. Contracts—Rescission—Necessity for Notice.**

As a general rule, an affirmative act on the part of the person desiring to rescind is necessary, and being necessary, that notice be given the adverse party, which may be either in the form of an actual declaration or acts brought to his knowledge amounting in law to such declaration, but which must clearly indicate the right asserted. 13 C. J. 618.

**7. Evidence — Pleading in Another Action—Limited Purpose—Extent of Admission.**

Where defendant pleads a conspiracy on the part of plaintiff and another party to cheat and defraud him out of a part of the property in controversy by bringing separate suits, involving the same issues, upon an agreement to act as witnesses for each other, and defendant introduces the petition of the party bringing the first suit without formally stating the purpose of introducing the same and the court admits it, the presumption will be indulged that it was introduced to prove the conspiracy and the defendant is bound by the petition for this purpose, but he does not admit the truthfulness of the facts stated in the petition.

**8. Witnesses—Impeachment.**

In determining whether or not a witness is successfully impeached and not worthy of credit and the evidence given by the witness together with all the impeaching evidence and the evidence of explanation and the facts and circumstances attending should be considered, and, to be successful, it must not only appear that the testimony of the witness varies from the truth, but that the variance is willful.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by J. R. Knight against James M. Cecil to recover an interest in an oil and gas adventure. Judgment for defendant, and plaintiff brings error. Affirmed.

Sigler & Jackson, for plaintiff in error.

Ledbetter & Ledbetter and I. C. Sprague, for defendant in error.

Opinion by THREADGILL, C. The action was brought by plaintiff in error, plaintiff in the trial court, against the defendant in error, defendant in said court, asking to be adjudged to be the owner of an undivided one-fourth interest in 29.47 acres of land located in Hewit oil field, in Carter county, and for the sum of $3,500. Plaintiff alleges that in the early part of the year 1917, he entered into a verbal agreement with the defendant and one George H. Montgomery of Valliant, Okla., in which it was understood that they would purchase a tract of land, being about 50 acres in section 15, township 4 south, range 2 west, in Carter county, which was being sold by a guardian sale, through the county court of McCurtain county, and the defendant was to furnish the money to buy the land and take the deed in his name, and plaintiff was to have a one-third interest in it for furnishing the information that the land was for sale and that it had a probable oil and gas value, and Montgomery, being an attorney at law, was to have one-third interest for examining the title and looking after the legal matters involved, and the defendant was to have a one-third interest for furnishing the money, and this agreement was modified by the defendant suggesting the name of Waldo Watkins, a friend of his, as a fourth party to the partnership and adventure, which was agreed to, and each one was to have a one-fourth interest in the profits after the property was disposed of and the defendant received back the money he had paid for the land with 10% interest.

It was further alleged that plaintiff bought the land which turned out to be only 29.47 acres; that in 1920 defendant leased the land for approximately $6,000, and, after paying all the expenses and the return of the $600 he invested as the purchase price, there was a profit of $4,000 to be divided among the four persons of the adventure; that the defendant paid the said Montgomery $1,000 to which he was entitled, but had never paid plaintiff the $1,000 to which he was entitled; that early in the year 1921, oil and gas was discovered on said land and thereafter the said defendant denied that plaintiff had any right or interest in any part of said land; that defendant had been collecting rents, revenues, and royalties from the oil produced from said land, the amount of which he was not able to state, but estimates upon his information and belief that said sum is more than $10,000, and that the plaintiff is entitled to one-fourth of said amount. It is further alleged that plaintiff had performed all his part of the contract and furnished the information that brought about the purchase of the land, and had always stood ready and willing at any time to do anything necessary to promote the adventure and to carry out his part of the contract, and that the defendant had failed and refused to carry out his part of said contract and had collected money due the plaintiff and converted the same to his own use and benefit. After a demurrer by the defendant was overruled defendant filed his answer which consisted first, of a general denial, and answering further, states that he purchased the land, described in plaintiff's petition, with the agreement and understanding, at the time of his said purchase, that he was to sell the same within a period not longer than 90 days from the date of purchase, and divide the profits, after reimbursing himself for the $600 invested, with 10% interest, among the four persons, named by plaintiff as interested in the adventure, and, also, with the further understanding and agree-

ment that if he could not sell the land within 90 days then, unless the other three parties paid him their pro rata part of the money invested, he was to become the absolute owner of the land, and they to have no further interest in it. He alleges further that he was unable to sell the land within the 90 days and so reported to said Knight, Montgomery, and Watkins, and that they disclaimed to him any right, title, or interest in and to the said lands, and, thereafter, he became the absolute owner of the same and held it in his own name and paid the taxes thereon and exercised dominion and control thereof and to the exclusion of the other parties; that their agreement was in parol. He alleged further that prior to the time that he purchased the land he was informed by the plaintiff that an oil and gas lease could be sold upon said land for an amount of money sufficient to pay the purchase price. Said information being given to him after he had bid for said lands in open court at the guardian sale and after he had put up his check in payment therefor, and, thereupon, he procured the county court to extend the time in which to have the sale confirmed, in order that he might ascertain the true information as to the value of an oil and gas lease upon said lands, and, thereupon, he came to Carter county and made an investigation as to the value of an oil and gas lease on this land and learned that it would only be worth $1 an acre; that he returned to Valliant, his home, and informed the plaintiff as well as the other parties of the information as to the oil and gas lease value, and, thereupon, he made an effort to withdraw his bid and check and give up the purchase of the land, but the court refused to release him; that the plaintiff declared to him that he would not claim or assert any interest or right in the land if the same could not be sold within 90 days after the purchase for an amount sufficient to repay the defendant the purchase price, and that plaintiff had expressed himself to various and divers persons that he would not claim any interest in the lands so purchased by the defendant, and defendant further states that after he purchased the land in 1917, he had exercised the exclusive dominion and control of same in the matter of giving oil and gas leases thereon and received large sums of money for the sale of oil and gas leases thereon, and that the plaintiff had knowledge of these facts and made no objections thereto, and at no time had asserted any right, title, or interest in and to the moneys so received. Defendant further answering pleaded a conspiracy between the plaintiff and Montgomery to cheat and defraud him out of one-half interest in the land and the oil and gas products. The answer further stated that the conduct of plaintiff in permitting the defendant to manage and control said lands and sell oil leases thereon estopped him from claiming or asserting any right, title, or interest, and that said conduct was sufficient to constitute an abandonment of all right, title, or interest that he might have had originally. The case was tried to the court on January 15 and 16, 1924, and resulted in a judgment in favor of the defendant, and the plaintiff appealed by petition in error and case-made and states five assignments of error as follows:

"1. That the court erred in overruling the plaintiff's motion for new trial. 2. The court erred in overruling the plaintiff's motion for a judgment at the close of the testimony. 3. That the court erred in rendering the judgment for the plaintiff, and assigns as error that the judgment is against the clear weight of the evidence in this case. 4. That the court erred in his findings of fact, and conclusions of law are contradictory to the defendant's pleadings and evidence. 5. The court erred in admitting certain irrelevant and incompetent testimony."

1. In discussing these errors complained of, plaintiff's first proposition is: "The finding of facts are contradiction of the pleadings and evidence and are void." We take it he means to say, are in contradiction of or is contradictory to the pleadings and evidence.

Plaintiff then proceeds to discuss the rule that a party is bound by his pleadings and whatever is admitted by the defendant in his pleadings is binding on him regardless of what the testimony may show, and many authorities were cited in support of the rule as the same applies to all parties to an action; Horan v. Hostorf (N. Y.) 120 N. E. 58; Rogers v. Brown, 15 Okla. 524, 86 Pac. 443; Conwill v. Eldridge, 71 Okla. 223 177 Pac. 79; Butler v. Kaulback, 8 Kan. 671; Losch v. Pickett, 36 Kan. 216, 12 Pac. 822.

We are not able to understand plaintiff's application of this rule. He pleads verbal contract as the basis of his action. He stated in his petition that in the early part of 1917 he and Montgomery and the defendant entered into the agreement to buy the 50 acres of land above described at the guardian sale as oil land and for oil purposes. He had obtained the information that it was a good oil adventure. Montgomery was a lawyer and would look after the legal matter connected with the deed, defendant was to put up the money and take the title in his name, and Waldo Watkins was to be the fourth man in the partnership as the

friend of the defendant, and each was to have a fourth interest in the adventure When the land should be sold or leased for oil and gas, defendant was to reimburse himself for the money and expenses advanced or furnished by him in the adventure, with 10% interest and the profits, if any, were to be divided among them, one-fourth each. The defendant bought the land, paid $600 for it, and took the deed in his own name. In 1920 he sold an oil and gas lease on the land for $6,000, and after paying back the purchase price and all expenses he had left $4,000 profits which should have been divided according to the agreement. He paid Montgomery $1,000 as his part of the profit but failed and refused to pay plaintiff his part. Oil had been taken from the land in 1921, and defendant had failed and refused to account to plaintiff or pay him his part, such was the substance of the petition. Defendant in his answer admits that they had an agreement for the adventure, predicated upon certain conditions. He was to furnish the money and buy the land at the guardian sale, and then he was to sell the same within 90 days from date of purchase and divide the profits, if any, among the four parties after reimbursing himself, and, if he failed to get a buyer for the land within 90 days, then the plaintiff and Montgomery and Watkins were to have no interest unless they paid him in money their pro rata of the money that he had paid for the land. He then states that he was unable to sell the land within 90 days and so informed the defendant and the other parties, and they disclaimed any interest in the land since which time he was the sole owner. He further states that after he bid on the land and before the sale was closed he visited the neighborhood where the land was located to ascertain its value for oil and gas; that defendant had informed him that an oil and gas lease could be sold on the land for an amount of money sufficient to pay the purchase price and on his visit to inquire as to the value he learned that it was only worth a dollar an acre. He returned and informed the defendant and the other parties and then made an effort to withdraw his bid and check and get from under the purchase, but he could not do so and was forced to take the land at the price bid, and at that time plaintiff expressed himself that he would not claim any interest unless the land could be disposed of within 90 days.

In the finding of fact the court says:

"Relying upon the representation of Knight that said land had a lease value of $20 to $25 per acre and thereupon the said James M. Cecil agreed to advance the money with which to pay for the land."

Plaintiff says this statement in the finding of fact cannot be reconciled with the defendant's pleading. Plaintiff fails to point out the inconsistency and we failed to see it. The pleading states that plaintiff informed defendant that an oil and gas lease could be sold for an amount of money sufficient to pay the purchase price. If this statement in the answer is material at all it is only for the purpose of showing the oil and gas value was sufficient to pay the purchase price and expenses and the exact amount beyond this could not be material. It was such a matter as could have been amended before or after the close of the evidence, and, if the testimony warranted, the court could consider it amended to conform to the testimony whether requested or not. Harris v. Newcombe, 56 Okla. 741, 156 Pac. 666; Miller v. Bains, 100 Okla. 178, 229 Pac. 140.

Referring to the testimony, we find that the defendant inquired of plaintiff even before he bid on the land as to the oil and gas value and plaintiff informed him it was worth from $20 to $25 per acre, and that Tom Rexroat, living near the land, had told him (plaintiff) that it could be leased to the Texas Oil Company for this value; that defendant, believing what plaintiff told him, stated to him that if he could lease the land for that amount he would "cut him in on it." This was defendant's testimony. The testimony further shows that he bid on 50 acres. The pleading, which was subject to amendment, together with this testimony, was evidently the basis of the finding of fact complained of. We do not think the finding was erroneous. It was substantially correct.

2. Plaintiff further contends that the finding of fact that there was no consideration to support the cause of action by Knight, except the information received from Knight by the defendant, that a lease could be sold on the land for from $20 to $25 per acre, was in conflict with the pleadings. The point of conflict is not clearly stated by the plaintiff. We must look to the pleadings themselves if there was a conflict. Plaintiff alleged a contract of joint adventure in which he furnished the information upon which it was based. The defendant admitted the contract of joint adventure based upon certain conditions, as above stated, and alleged that before he bought the land plaintiff informed him that it had an oil and gas value sufficient to pay the purchase price which was found to be untrue. The

evidence above stated as to what plaintiff said about the oil and gas value and which was within the issues considered as amended under the authorities cited, was sufficient basis for this finding of fact. The evidence further shows that defendant had knowledge of the guardian sale from the attorney who was representing the guardian before the plaintiff visited the neighborhood of the land and before he knew about the sale, and that defendant had even agreed to bid on the land, and his promise to bid on the land was made and the information given to the county court before the court would make the order of sale, and the only information furnished by plaintiff was that the land could be leased to the Texas Oil Company for from $20 to $25 an acre, and the trial court evidently believed this testimony and made it the basis of the finding of the fact complained of.

3. Plaintiff next complains that the court's fourth finding of fact is erroneous in finding that defendant purchased the land, not under an agreement for joint adventure, but as an individual account. Defendant admitted in the answer that there was an agreement for joint adventure to buy the 50 acres of land; that the adventure was based upon conditions, as above stated, and the conditions failed and the adventure failed; that he then proposed other conditions for carrying out the adventure and the parties failed to accept the same and disclaimed further interest in the adventure. This was denied by the plaintiff. The testimony was conflicting as to the new conditions. The court evidently believed the defendant's evidence as to the new terms offered by the defendant and the failure of the plaintiff and the others to accept the same. Defendant testified that, after bidding on the land and learning that it had but little oil and gas value and very little agricultural value, that he informed plaintiff and the others of the situation and then tried to withdraw his bid and check and get the court to release him from the purchase, and Montgomery's testimony on this point corroborates the defendant. The court was not willing to release the defendant from the purchase and he took the land with no prospect of future profits. We think the finding of the court on this point is fully sustained by the evidence. The rule applicable is stated in 23 Cyc., page 462, under subdivision F, as follows:

"As a defense against an action based on a contract for a joint adventure defendant may prove its rescission or abandonment."

Also at top of page 460 as follows:

"But a party who fails or refuses to contribute toward the adventure before any part of the undertaking is accomplished cannot claim any interest in the profits derived therefrom, or in property subsequently acquired by his associate individually, and with his own funds."

4. Plaintiff next complains that the court's finding of fact, that before the purchase was made the agreement had been dissolved and that the land was not purchased under the agreement or any other agreement between Knight and Cecil, but that the land was purchased by Cecil in his individual capacity, is erroneous. This was only a part of the count's finding in this paragraph complained of, and what we have said on the preceding point is applicable here.

We may state further that the testimony of defendant's witnesses shows that plaintiff did not take any further interest in the purchase of the land after the purchase was made; that he stated to defendant that he would not consider that he had any interest and that he stated to other parties, whose testimony is in the record, that he did not have any interest, and while the plaintiff denies this testimony and asserts that he did not make such statements, still the court found against him and we cannot say that the weight of the evidence is against the court's finding. It is true the defendant in his testimony states that, under the agreement he made with the plaintiff and others, he was to sell the land in 60 or 90 days and divide the profits, and he says he failed to make a sale and could not lease the land for oil and gas within that time. He also states that if he could have turned the land within 90 days and there had been any profits, the plaintiff would have been entitled to his part of the profits, and he also says that he could have paid his pro rata part of the purchase price after the 90 days and had part in the land. This testimony in view of other testimony as to what transpired at the time of the purchase is not very clear. The plaintiff insists that the defendant is bound by his testimony, but all of the testimony of the defendant with all of the facts and circumstances must be taken into consideration, in determining the contract and the issues between the parties. We cannot see where these findings of fact are materially in conflict with the pleadings, nor can we say that the weight of the evidence is against the court's findings.

In this connection plaintiff says the court's conclusions of law are in direct conflict with the pleadings. The first one concludes that there never was a joint adven-

ture entered into between Cecil and Knight; the second one concludes that there was no consideration to support the agreement between Knight and Cecil; the third one concludes that if there ever was a joint adventure between the parties it was dissolved. We do not think it is necessary to discuss the conclusions of law complained of. They are consistent with the findings of fact, and as we hold that the findings are substantially correct under the pleadings and issues subject to amendment and the facts and circumstances disclosed by the record it would serve no useful purpose to pursue the discussion under this complaint.

5. Plaintiff's next proposition is, that under the defendant's answer plaintiff was entitled to recover. Plaintiff's contention seems to be that since defendant admitted in his answer that there was an agreement that defendant should buy the land at the guardian sale and sell the same within 90 days for profits, and if he failed to sell, the same within 90 days then plaintiff and the others were to pay their pro rata part of the money advanced to be entitled to further rights, was sufficient admission to entitle plaintiff to an interest in the land whether the land sold or not and whether he paid his pro rata part of the purchase price or not, and he seems to contend for this proposition even against the further pleading in the answer that defendant failed to sell the land and so informed the plaintiff and the others and plaintiff disclaimed any right, title, or interest in the land. Many authorities are cited in support of the contention, but none of them can be applied to a statement of facts such as we find in this answer. If plaintiff's contention were correct then a party could not voluntarily refuse to comply with the conditions of an agreement, upon which his rights are predicated, and made a disclaimer or declaration, on his part, that he would not pay his pro rata part, and would not claim any further interest, and thereby release himself from further liabilities even by the consent of the other party, and would not warrant the other party in proceeding in the matter as if there had been no agreement. The defendant is bound by his pleading and so is the plaintiff bound by it, where he does not object to it, and where he invokes it in his own interest. The language of the answer, as we view it, is sufficient to plead facts of abandonment on the part of the plaintiff. We cannot see any merit in plaintiff's contention. Adams v. McGraw. 99 Okla. 65, 225 Pac. 980.

6. Plaintiff further contends that before he could be deprived of his interest in the contract he would have to have notice, and that there is no intention of notice shown in defendant's answer or in the evidence. The answer states that the defendant notified or reported to the plaintiff and the other parties that he was unable to sell the land within 90 days, and further states that he visited the neighborhood of the land and found the oil and gas rights on it were of very little value and reported this to plaintiff and the other parties, and thereupon he tried to be released from his bid and he so informed them and the evidence shows and the court found these facts, as pleaded, and further that there were only about 29 acres instead of 50, on which he bid, and there was an eight year lease on the land, all of which information was given plaintiff, and, thereupon, he stated that he had no further interest in the adventure, and the evidence further shows that he took no further interest in the matter till sometime in 1922, when one of the other parties brought suit against defendant for an interest in the land and its oil products. We agree with the rule stated in 13 C. J. 618, cited by plaintiff, which is as follows:

"As a general rule an affirmative act on the part of the person desiring to rescind is necessary. it being necessary that notice be given the adverse party, which may be either in the form of an actual declaration, or acts brought to his knowledge amounting in law to such a declaration, but which must clearly indicate the right asserted."

We also agree with the rule stated in the same authority, section 619, and Dike v. Martin et al., 85 Okla. 103, 204 Pac. 1106, which is as follows:

"If any party to the joint adventure had refused to substantially perform his obligation, his associate might terminate their relation with him and carry out the enterprise to his exclusion, and if for this or any other valid reason they chose to terminate the relationship, they could do so only by giving notice to him that the relationship was then and there ended."

7. Plaintiff further contends that the evidence of defendant shows that plaintiff is entitled to judgment. Defendant introduced a petition and answer in evidence in the case of Montgomery against Cecil, a suit involving the same issues. First the petition, and then, at the suggestion of the court, the answer, and plaintiff contends that he is bound by the facts stated in the petition as to what the contract was between the parties, and since the petition alleged that the contract provided that said Knight carry on the negotiations and that

said Montgomery was to pass upon the title and attend to all the legal matters involved in the sale; that the said James M. Cecil was to furnish the money to purchase an interest in said real estate and that, after the said James M. Cecil had received back all the money which he had paid upon said land together with 10 per cent. interest thereon, each of the parties could have and be entitled to one-fourth interest therein, that he was bound by the contract as thus stated and all the other facts stated in the petition.

The defendant in offering the petition in evidence did not state the purpose for the offer. It will be observed that the answer of the defendant, in the third paragraph, pleaded conspiracy between Montgomery and Knight, in bringing two suits against him to deprive him of his rights in the land. In the first one, Knight was to be a witness for Montgomery, and in the second one, Montgomery was to be a witness for Knight, and, it seems that the petition was introduced to show the conspiracy. Plaintiff cited many authorities to support his contention, but we do not think the authorities cited are applicable and some of them support a very different contention. The case of Richardson v. Southwestern Cotton Seed Oil Company, cited, is found in 15 Okla. 263, 81 Pac. 781, and the following language is quoted:

"Where a party voluntarily offers in evidence the record, pleadings, instructions and journal entry showing the final adjudication of a former action between himself and another party, for the purpose of establishing his defense in the case at bar, he vouches for the authenticity and correctness of the record, and is estopped from introducing evidence to impeach the validity or correctness of such record, and objection to such testimony is properly sustained."

It could not be contended that the introduction of the record, pleadings, instructions, and journal entry served any purpose other than to show what the parties contended for and the adjudication. The party introducing the record could not deny that it was the record, that is to say, he could not deny that the petition and answer stated otherwise than what they purported to state and he could not deny that the instructions stated otherwise than what they purported to state. He did not have to admit the truthfulness of the facts stated in the pleadings but only that such facts were stated and that such facts were stated he could not deny. Another case cited, Chrisman v. Gregory, 4 B. Mon. (Ky.) 474, illustrates the same rule. The party reading a deed in evidence admits that it was made, acknowl-edged, certified, and recorded as it purports to have been, but not that it is efficacious to pass titles. The fact of passing title he may deny. We do not think that defendant admitted the correctness of the facts stated in the petition, when he introduced it in evidence, since the issue of conspiracy, tendered in the answer, and the introduction of the petition would go to the fact as to how the parties acted together in bringing suits against him.

8. As to the impeachment of defendant, contended for by the plaintiff, we are not able to agree with counsel. An examination of the petition in the Montgomery Case and the petition in this case as well as the answers in the two cases discloses some material difference in the pleadings, but the difference is more technical than practical and the same may be said of the evidence in the two cases, and, after going over the entire record and reading the briefs of the parties carefully, we are unable to say that the testimony of the defendant was impeached by some inconsistencies, in what he said in answer to questions, some of which were not well framed, or by testimony given in the case and which he failed to give in the Montgomery Case. These inconsistencies are about just such conflicts and deflections as we generally find in trials where the issues grow out of verbal agreements and several years have passed since the agreements were made. In determining whether or not a witness is successfully impeached and not worthy of credit, all the evidence given by the witness together with all the impeaching evidence and the evidence of explanations and the facts and circumstances attending should be considered, and to be successful it must not only appear that the testimony of the witness varies from the truth, but that the variance is willful.

We are of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc p. 1969; (2) 33 C. J. p. 871 (1926 Anno); (3) 33 C. J. p. 870; (4) 4 C. J. p. 901; (5) 33 C. J. p. 848; (6) 13 C. J. p. 618; (7) 22 C. J. p. 423; (8) 40 Cyc p. 2753 (1926 Anno).